**SOUTHEASTERN BANK, Appellant,**

v.

**Sylvia Ford BROWN, Appellee.**

**No. CIV. A. CV400–285.**

United States District Court,
S.D. Georgia,
Savannah Division.

July 17, 2001.

---

Marvin L. Pipkin, Darien, GA, for Appellant.

James Justin Jurich, Office of the Chapter 13 Trustee, Savannah, GA, for Appellee.

## ORDER

MOORE, District Judge.

This case is before the Court on appeal.[1] On September 29, 2000, United States Bankruptcy Judge James D. Walker Jr. issued an order confirming Debtors' repayment plan, which included repayment of the principle and pre-petition interest on a loan from Appellant. Because Debtors' plan does not provide for payment of the post-petition interest on Appellant's loan,

---

1. Pursuant to Bankruptcy Rule 8012, Appellant has requested oral argument on this case. (Doc. 5). That request is **DENIED**. The Court finds that "the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." Fed. R. Bankr.P. 8012.

and because Appellant's loan to Debtor included a cosigner, Appellant had sought relief from the co-debtor stay imposed by 11 U.S.C. § 1301 in order to collect that interest from the cosigner. However, the September 29, 2000 order denied such relief. Appellant now appeals. For the reasons set forth below, the judgment of the Bankruptcy Court is **REVERSED** and the case **REMANDED** for further proceedings consistent with this opinion.

## BACKGROUND

The Court adopts the following findings of fact, as stated by the Bankruptcy Court, as the findings of fact on appeal. Debtors Brad and Stefane Deen filed for Chapter 13 bankruptcy relief on February 3, 2000. Among their debts, Debtors listed a consumer loan made to Debtor Brad Deen from Appellant Southeastern Bank. Though Debtors listed Appellant as a secured creditor, the loan is actually unsecured. However, Brad Deen's father, Robert L. Deen, cosigned the note.

When Debtors' repayment plan was originally filed, it did not propose to pay the loan to Appellant in full. Therefore, Appellant filed a request for relief from the co-debtor stay created by 11 U.S.C. § 1301, in order to collect the balance on the debt from Debtor's father. In response to Appellant's request, Debtors amended their plan on June 19, 2000. In the amended plan, Debtors proposed to pay Appellant's loan in full, including all interest.

In late July 2000, the Bankruptcy Court heard argument on Appellant's motion for relief from the stay concurrently with the confirmation hearing. The Chapter 13 Trustee made an oral objection to Debtors' proposal to pay post-petition interest on

Appellant's loan as part of the amended repayment plan. Although the Debtors testified that they wished to pay the interest in order to protect the cosigner from liability, the Bankruptcy Court found that payments for post-petition interest could not be included in the plan in light of the Trustee's objection. As a result, the Bankruptcy Court confirmed the Debtors' plan,[2] but only after Debtors again amended their plan to exclude post-petition interest. However, even though post-petition interest was no longer included in the plan, the Bankruptcy Court nevertheless denied Appellant's motion for relief from the co-debtor stay to collect such interest from Debtor's father. Appellant then filed this appeal.

In its brief in support of its appeal, Appellant asserts three grounds of error by the Bankruptcy Court. First, Appellant argues that the Bankruptcy Court erroneously found that the Code prevents payment of post-petition interest on a cosigned loan. Second, Appellant contends that the Bankruptcy Court wrongly held that the co-debtor stay could not be lifted so that Appellant could recover post-petition interest from the co-debtor. Finally, Appellant claims that the Bankruptcy Court could not require that payments made through the repayment plan go to principle rather than towards the interest that would have accumulated had Debtors not filed for bankruptcy. The Chapter 13 Trustee filed a brief in response, asking the Court to uphold the Bankruptcy Court's ruling.

## ANALYSIS

I. *Standard of Review*

■ A bankruptcy court's findings of fact are reviewed under the clearly errone-

---

**2.** As part of its findings, the Bankruptcy Court found that while the proposed repayment plan did not provide for any payments toward

general unsecured claims, the plan was proposed in good faith, and would therefore be confirmed.

ous standard. *See* Fed. R. Bankr.P. 8013; *Bush v. Balfour Beatty Bahamas, Ltd.*, 62 F.3d 1319, 1322 (11th Cir.1995). Conclusions of law, however, are reviewed de novo. *Id.* In this appeal, the parties dispute not facts but the proper interpretation of the Bankruptcy Code. "The proper construction of the Bankruptcy Code, whether by the bankruptcy court or the district court, is a matter of law," subject to de novo review. *Meehan v. Wallace (In re Meehan)*, 102 F.3d 1209, 1210 (11th Cir.1997). Hence, the Court will review the issues on appeal in this case de novo.

## II. *The Bankruptcy Code and the Approaches in this District*

Two of Appellant's three grounds for appeal have been debated in several different cases heard by the Bankruptcy Courts of this District within the past couple of years. These issues, which are closely related, are, first, whether a debtor's plan for reorganization can include payment of post-petition interest on a loan on which there is a co-debtor, and second, if the plan does not include post-petition interest, whether the co-debtor stay may be lifted so that the creditor can proceed directly against the co-debtor for the unprovided-for amount. Resolving these issues requires a careful look at the Bankruptcy Code. It also requires a careful look at the conflicting interpretations of the Code offered by different courts. Thus, the Court will begin its analysis with a discussion of the applicable statutes and will follow that discussion with a review of the opinions of the Bankruptcy Courts interpreting those provisions.

## A. *The Relevant Statutes*

■ The central statute in this dispute is 11 U.S.C. § 1301. That statute stays civil actions against cosigners on loans made to bankruptcy debtors, with what is commonly known as a "co-debtor stay." [3] In other words, when a debtor makes a loan with a cosigner, the fact that the debtor declares bankruptcy does not automatically entitle the creditor to commence a civil action against the cosigner. Instead, the creditor must wait until the case is "closed, dismissed, or converted to a case under chapter 7 or 11 of this title" before attempting to collect the debt from the cosigner. 11 U.S.C. § 1301(a)(2). There are however, exceptions to this rule. For instance, the bankruptcy court may grant relief from a stay to the extent that "the plan filed by the debtor proposes not to pay such claim." 11 U.S.C. § 1301(c)(2).

■ In this case, the key issue in interpreting § 1301 is what is meant by the use of the term "claim" in § 1301(c)(2) and whether that "claim" can include post-petition interest. Under 11 U.S.C. § 101(5), "claim" is defined as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, *unmatured,* disputed, undisputed, legal, equitable, secured, or unsecured." (emphasis added). Clearly, in a general sense, the word "claim" includes unmatured interest.

However, another bankruptcy provision, 11 U.S.C. § 502, directs that a claim that includes unmatured interest may not be

---

**3.** In relevant part, the statute reads:
    (a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt unless—... (2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.
11 U.S.C. § 1301.

paid through a debtor's repayment plan under certain circumstances. Specifically, § 502 states that full payment of a claim as proposed by the debtor is only permitted if a party in interest does not object. If a party in interest does object, the bankruptcy court determines the amount of the claim that will actually be allowed in the plan. When deciding the amount the plan will cover, however, the bankruptcy court must disallow the claim to the extent it includes "unmatured interest." § 502(b)(2).[4] Given these different statutes, the central question, then, is whether in § 1301(c)(2), the term "claim" means the broadly defined "claim" that is used in § 101(5), or only the narrower part of a potential claim that is actually allowed to be paid under § 502.

## B.  *The Split in this District*

The effect of the interplay between §§ 101, 502, and 1301 has been debated several times by the Bankruptcy Courts of this District. Judge Walker, who presides over this case, has visited this dilemma before with his decision in *In re Alls.* 238 B.R. 914 (Bankr.S.D.Ga.1999). Both here and in *Alls*, Judge Walker found that § 1301(c)(2) only lifts the stay to the extent the debtor does not pay the full amount the Bankruptcy Code actually allows the debtor to pay. Because Judge Walker held that § 502 does not allow a debtor to pay post-petition interest in a repayment plan, he found that the stay could not be lifted so that the creditor

could collect post-petition interest from the cosigner.

Judge Lamar W. Davis, Jr. has also directly decided these issues, but reached the opposite conclusion from Judge Walker in his opinions. *See In re Campbell,* 242 B.R. 547 (Bankr.S.D.Ga.1999); *In re Butler,* 242 B.R. 553 (Bankr.S.D.Ga.1999). Judge Davis held that to the extent that interest or any other part of the debt is not paid by the plan, the stay is lifted. He further held that, despite § 502, post-petition interest may be included in a repayment plan.

These contrasting approaches show a clear split in this District. As a result, debtors and creditors appearing in Bankruptcy Court find that the result in their particular case depends directly on the fortuity of their judicial assignment. This appeal, however, will finally resolve this dilemma.

## III.  *Interpreting the Code*

Having carefully reviewed the statutes and prior cases on these issues, this Court now holds that the decision of the Bankruptcy Court in this case must be reversed. To explain why, the Court will first examine the purpose of the co-debtor stay and why it should be lifted if the plan does not pay any part of the full debt, including post-petition interest. Then, the Court will discuss why bankruptcy debtors can avoid a lift of the co-debtor stay by including post-petition interest in their repayment plans.[5] Finally, the Court will

**4.** In relevant part, § 502 reads:
A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor ... objects ... [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall

allow such claim in such amount, except to the extent that—... such claim is for unmatured interest.
11 U.S.C. § 502(a)-(b)(2).

**5.** The Court notes at the outset that, in this case, these first two issues are heavily intertwined. This opinion, however, treats the two issues as distinct problems, addressing and resolving first the stay and then the payment

consider any other issues raised by this appeal.

### A. *Co-debtor Stay*

In the proceedings below, the Bankruptcy Court held that Appellant is not entitled to relief from the co-debtor stay in order to collect post-petition interest when post-petition interest is not paid by the approved reorganization plan. The Bankruptcy Court based this finding in part on what it held is the clear context of § 1301 within the Bankruptcy Code. According to § 502, post-petition interest is not allowed if a party in interest objects to the claim. Here, the Trustee objected. Thus, the Bankruptcy Court held that the amount of Appellant's claim that can be paid in the plan necessarily excludes post-petition interest. In effect, the "allowed claim" is less than the claim for the full debt that the Debtors had proposed. Although § 1301(c)(2) uses the term "claim" and not "allowed claim," the Bankruptcy Court found that Congress only meant for the stay to be lifted to the extent a debtor is not paying the full amount the debtor is *allowed* to pay under the Code. Since the Bankruptcy Court held that a debtor cannot pay post-petition interest because of § 502, the Bankruptcy Court found that § 1301(c)(2) clearly requires the stay to remain in effect for that amount.

■ This Court, however, disagrees with the Bankruptcy Court's conclusion. First of all, the Court disagrees that the plain meaning of § 1301 unambiguously points to the Bankruptcy Court's result. Section 1301(c)(2) lists only the words "such claim." According to the definitions section of the Code, "claim" includes unmatured interest. 11 U.S.C. § 101(5). Section 101 clearly states that the defini-

tions contained therein apply "In this title." In other words, the definitions listed in § 105 apply wherever the terms appear in the Code, unless the particular statute indicates otherwise. *Cf. In re Shelbayah,* 165 B.R. 332, 334–35 (Bankr.N.D.Ga.1994) (holding that if a term means different things in different sections, "one would expect at least some mention of that change in meaning ... Section 101 of the Bankruptcy Code begins with the simple words 'In this title' and thereby makes plain that a defined term has the meaning given in section 101 and not a restricted subset of that meaning.").

■ In addition, even within § 1301, the word "claim" suggests a broad meaning. When § 1301(c)(2) authorizes a lift of the stay to the extent the plan does not propose to pay "such claim," the words "such claim" reference the phrase "all or any part of a consumer debt of the debtor." Post-petition interest is a part of the debtor's, and also the cosigner's debt. Therefore, according to § 1301(c)(2), if the plan proposes not to pay *"all or any part* of a consumer debt," including the post-petition interest, the stay is lifted so that the creditor may proceed against the cosigner for the remaining amount. As a result, contrary to the Bankruptcy Court's finding, the plain wording suggests that a broad definition of "claim" applies in § 1301(c)(2). *See In re Jacobsen,* 20 B.R. 648, 650 (9th Cir. BAP 1982) (holding that the language of § 1301(c)(2) is "unqualified," so that "[t]here is no limitation on the creditor's right to sue the co-debtor for the amount not provided for by the plan.").

This Court does recognize that the presence of § 502 in the Code does inject some uncertainty into the meaning of § 1301.

---

of post-petition interest. While this ordering of issues and their separate treatment may seem to ignore the interplay between the is-

sues, the Court finds it to be the simplest and clearest approach for what is a very confusing topic.

However, if Congress meant for "claim" to actually mean "allowed claim," it could have explicitly said so as it did elsewhere in the Code. *See, e.g.,* 11 U.S.C. 726(a); *see also Butler,* 242 B.R. at 556 n. 1 (discussing cases that found that the use of "allowed claim" in certain statutes made the absence of "allowed" in other statutes meaningful). On this point, the Court agrees with the Court in *In re Butler:*

> Section 1301 employs the term 'claim.' It does not limit its scope to situations where the 'allowed claim' is not being paid in full … If the protection of Section 1301 is limited to claims for principal and pre-petition interest only, the Section 1301 would simply use the term 'allowed claim.' Since it uses the broader term 'claim,' however, a creditor is entitled to relief from the automatic stay if its entire claim including post-petition interest, is not proposed to be paid by the Chapter 13 debtor.

*Butler,* 242 B.R. at 556. Hence, the absence of the phrase "allowed claim" further supports this Court's conclusion that the stay should be lifted to whatever extent the debt is not paid by the plan.

In its opinion, the Bankruptcy Court acknowledged that some provisions explicitly use the phrase "allowed claim," but pointed to other statutes where, according to the Bankruptcy Court, "allowed claim" is only implied. *In re Deen,* 260 B.R. 577, 583 (Bankr.S.D.Ga.2000) (citing 11 U.S.C. §§ 1122 and 1322). The Bankruptcy Court stated that, as it found true in those other provisions, the use of the term "allowed" would be redundant in § 1301(c)(2) given its context. *Id.* However, even if Congress did not explicitly identify claims as "allowed" in all situations in which allowance is an implied prerequisite, Congress has used the phrase "allowed claim" in some statutes. As a result, its failure to use the term "allowed" in § 1301(c)(2), fur-

ther suggests that the section is at least ambiguous.

Given the arguable ambiguity, the legislative history of § 1301 proves particularly helpful in this situation. Congress stated:

> If the debtor proposes not to pay a portion of the debt under his Chapter 13 individual repayment plan, then the stay is lifted to that extent. The creditor is protected to the full amount of his claim, including postpetition interest, costs and attorney's fees, if the contract so provides. Thus if the debtor proposes to pay only $70 of a $100 debt on which there is a cosigner, the creditor must wait to receive the $70 from the debtor under the plan but may move against the co-debtor for the remaining $30 and for any additional interest, fees, or costs for which the debtor is liable. The stay does not prevent the creditor from receiving full payment, including any costs and interest, of his claim. It does not affect his substantive rights. It merely requires him to wait along with all other creditors for that portion of the debt that the debtor will repay under the plan.

H.R.Rep. No. 95–595, at 122 (1977), U.S.Code Cong. & Admin.News 1978, at 5787, 6083. As this language shows, Congress clearly intended for the co-debtor stay to be lifted to the extent the plan does not provide for full payment of the claim, including interest. The stay only forces the creditor to wait for funds that are actually being paid through the plan.

The Bankruptcy Court acknowledged that if the legislative history were considered, the result would be different. *See Alls,* 238 B.R. at 920 ("If the issue of stay relief were controlled by the legislative history rather than the code, the answer might be the opposite."). However, the Bankruptcy Court found that any reliance on § 1301's legislative history is inappro-

priate because, according to the Bankruptcy Court, the plain language unambiguously leads to the opposite result, and courts should not rely on legislative history when the statute itself is already clear. For this reason, the Bankruptcy Court stated that other courts that have relied on § 1301's legislative history did so prematurely.

As explained above, this Court disagrees with the Bankruptcy Court that such reliance on legislative history is misplaced. This Court finds that § 1301, if it does not plainly support the result here, is at least ambiguous. Moreover, even if the statute could be said to unambiguously support the Bankruptcy Court's findings, the legislative history should not be entirely ignored since it clearly reflects an intent wholly contrary to the result the Bankruptcy Court reached. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters ... In such cases, the intention of the drafters, rather than the language, controls.") (citation omitted); *see also Bob Reves v. Ernst & Young*, 507 U.S. 170, 177, 113 S.Ct. 1163, 1169, 122 L.Ed.2d 525 (1993) (holding that unambiguous language is conclusive unless "a clearly expressed legislative intent to the contrary" exists) (citation omitted). Hence, as the legislative history clearly reflects, § 1301 must grant a creditor relief from the stay whenever the plan does not pay the full amount of the debtor's debt, including post-petition interest.

The Court finds that this holding is fair, logical and consistent with the Code. Cosigned debts are unique in bankruptcy with many interests at stake. Before giving the loan to the debtor, the creditor secured the promise of the cosigner that if for some reason the debtor could not pay, the cosigner would be liable on the debt. As a result, the creditor protected itself through contract from the very problem that has arisen here, the debtor's inability to pay his or her debts. At the same time, however, many cosigners are friends and relatives of the debtor, who want to and maybe even feel obligated to help their loved one, but who never imagine they will someday have to actually pay off the loan made for their loved one's benefit. Finally, debtors themselves are in a very awkward situation. They are trying to regain financial control of their lives but are acutely aware of the problems that have now befallen their cosigners. The concern that bankruptcy debtors have for their cosigners gives creditors tremendous leverage as the debtors consider their bankruptcy options.

Given these diverse interests, the Court finds that the result here strikes the most appropriate balance. Under this holding, debtors have an opportunity to protect their cosigners from liability. They are not pressured to sign any new agreements with their creditors or otherwise give their creditors special consideration. *See* H.R.Rep. No. 95–595, at 122 (1977), U.S.Code Cong. & Admin.News 1978, at 6083 ("The automatic stay of creditor action against co-debtors will relieve the debtor from indirect pressure to pay certain creditors in full immediately, in spite of the pendency and the supposed protection of the Chapter 13 case."). Instead, the debtors know they can pay the debt themselves through the plan along with other debts. While doing so, debtors also know that even if their creditors are not receiving their money as quickly as the creditors would like, the creditors are nevertheless prevented from going after the cosigners instead, at least as long as the debtors are paying the full debt.

Cosigners benefit by receiving at least a temporary reprieve from the liability they technically agreed to. As long as debtors do in fact pay the full debt through bankruptcy, cosigners can avoid the liability they perhaps never expected to actually incur. Of course, if debtors do not propose to pay the debt in full in the plan, their co-debtors will have to pay, but if debtors are not going to pay, their co-debtors would be liable at some point anyway. That cosigners might somehow benefit from putting off that liability temporarily does not serve such a significant purpose as to undermine the result reached here. See H.R.Rep. No. 95–595, at 122 (1977), U.S.Code Cong. & Admin.News 1978, at 6083 ("[The co-debtor stay] is designed only to protect the principal debtor, not the co-debtor. Any protection of the co-debtor is incidental.")

Finally, no matter what happens, creditors who have protected themselves from this very problem still get their money. See In re Harris, 16 B.R. 371, 376 (Bankr. E.D.Tenn.1982) (holding that the interest in protecting debtors from outside pressure is limited in order to "insure that the creditor does not lose the benefit of the bargain he made for a cosigner."). If debtors pay their cosigned debts through their plans, creditors may not receive the money as quickly as they would like, but payment is nevertheless assured.[6] See H.R.Rep. No. 95–595, at 122 (1977), U.S.Code Cong. & Admin.News 1978, at 6083 ("[The co-debtor stay] will require a creditor with a cosigner to share equally in time with other creditors, and to wait for payment as all other creditors are required

to do when a debtor seeks the protection of the bankruptcy laws."). If the full debt is not paid through the plan, creditors are not forced to wait until the plan is complete to receive the money they are unquestionably owed from cosigners. Since creditors are entitled to the full amount in any event, forcing them to wait until dismissal of the case, when all parties know that the creditors will never receive full payment through the plan, makes little sense. See Jacobsen, 20 B.R. at 650 ("It would make little sense to defer such relief when it is known that the creditor will never receive the unprovided-for amount, under the plan, from the debtor."); see also H.R.Rep. No. 95–595, at 122 (1977), U.S.Code Cong. & Admin.News 1978, at 6083 ("[The co-debtor stay] merely requires [the creditor] to wait along with all other creditors for that portion of the debt that the debtor will repay under the plan.").

For these reasons, the Court finds that the result required under the Code is also the most fair result possible. The stay should be lifted to the extent the bankruptcy debtor does not pay the full debt through the repayment plan. The Bankruptcy Court's finding to the contrary is hereby reversed.

### B. Post–Petition Interest

This Court also disagrees with the Bankruptcy Court's findings on the issue of whether post-petition interest may be provided for in a debtor's reorganization plan. Although some courts have held that post-petition interest on a cosigned

---

**6.** While no general unsecured claims are being paid through the plan in this case, in other cases, the fact that other unsecured creditors may not be paid as much, if at all, because the debtor instead chooses to pay in full a cosigned debt may suggest that this result is not entirely equitable. However, unlike general unsecured creditors, a creditor with a cosigner on the loan has made specific efforts to protect itself from this problem. As long as the debtor's repayment plan is proposed in good faith, this difference alone justifies special treatment.

loan can be included in a debtor's repayment plan, *see, e.g., International Harvester Employee Credit Union v. Grigsby*, 13 B.R. 409, 412 (Bankr.S.D.Ohio 1981), the Bankruptcy Court held that it cannot. *Deen*, 260 B.R. at 582–83; *see also In re Saunders*, 130 B.R. 208, 213 (Bankr. W.D.Va.1991). The Bankruptcy Court found that the language of § 502 is clear in that post-petition interest may not be included in a claim to which a party in interest has objected, as the Trustee did in this case. While the Code allows for some exceptions, the Bankruptcy Court maintained that cases where a co-debtor is also liable on a loan do not invoke any of those exceptions.

In reaching that result, the Bankruptcy Court was unpersuaded by the argument from other courts that § 1322(b)(1), which allows unsecured claims on which there is a cosigner to be treated differently from other unsecured claims, allows an exception to the rule that post-petition interest cannot be included in the debtor's plan.[7] Instead, the Bankruptcy Court found that § 1322 allows only different payment amounts for claims on which a co-debtor is liable as compared to other unsecured claims. *Deen*, 260 B.R. at 584; *see also Alls*, 238 B.R. at 920 ("Section 1322(b)(1) merely allows separate classification of co-debtor, unsecured claims so that a debtor can pay more on such claims than on other unsecured claims.") (citation omitted). Overall, the Bankruptcy Court held that if Congress had intended for claims involving cosigners to provide an additional exception to § 502's prohibition against payment of post-petition interest, Congress would have said so explicitly.

The Court again disagrees with the Bankruptcy Court's conclusion. The Court finds that because the stay must be lifted if post-petition interest is not provided for in the plan, § 1301 must by implication authorize an exception to the prohibition against post-petition interest as stated in § 502. Otherwise, the stay would have no meaning. Instead, in every case where a party in interest objects to full payment of a claim, which includes almost every bankruptcy case ever filed, the creditor would automatically be able to seek payments for post-petition interest from the co-debtor. In effect, the stay would never apply and the cosigner would always be immediately liable for at least some portion of the debt. Such an ineffective stay cannot be said to have been Congress's intent.

Several courts have held that the language of § 1322, which allows a court to treat co-debtor claims differently from other classes of claims, authorizes a court to permit the payment of post-petition interest in such cases, even if in other cases post-petition interest is excluded. *See, e.g., Butler*, 242 B.R. at 557–58 ("If a debtor proposes payment in full, such separate classification is justified because of the preferred status Congress afforded to co-debtor claims.") (citing 11 U.S.C. § 1322(b)(1)). While this Court is not confident that § 1322 actually provides explicit authorization for treating post-petition interest differently in cosigned loans, the Court does find that § 1322 clearly shows that cosigned loans are unique and can be treated differently in at least a general sense.

---

7. In relevant part, § 1322 reads:
   (b) Subject to subsections (a) and (c) of this section, the plan may—(1) designate a class or classes of unsecured claims ... but may not discriminate unfairly against any class so designated; *however, such*

*plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.*
11 U.S.C. § 1322(b)(1) (emphasis added).

■ Given the practical effect of § 1301 and the fact that the Code itself acknowledges that cosigned debts are unique, this Court must find that § 1301 is implicitly excepted from the post-petition interest provisions of § 502. As was discussed above, in creating § 1301, Congress sought to balance a broader range of interests than those implicated in cases where no co-debtor is involved. One of the results of this balance is an exception to the general rule against payment of interest in the repayment plan.

■ Certainly, Congress could have been more explicit regarding its intent on this issue,[8] but the Court is nevertheless confident that this holding is in keeping with what Congress had planned. Congress clearly intended for a stay to be available, but Congress also clearly intended for creditors to be able to collect what they are owed, even post-petition interest. The only way to give meaning and effect to those purposes is to read § 1301 as an exception to § 502. Debtors may include post-petition interest on cosigned debts in their repayment plans, despite a party's objection to that claim. As a result, the Bankruptcy Court's finding to the contrary is reversed.

### C. Other issues

■ Appellant also argues that because the Bankruptcy Court disallowed payment of post-petition interest in Debtors' plan, the Bankruptcy Court impliedly designated any payments made to the plan to go to principle rather than interest. Because this Court has held that post-petition interest can be included in the plan, the Court finds this issue is probably mooted. However, to the extent this issue remains, the Court reiterates that a creditor is enti-

tled to the full amount of its claim, including all post-petition interest. If the structure of the plan does not provide for the full amount that the creditor would have received absent bankruptcy, the creditor may recover the additional amount from the cosigner.

To the extent any other arguments from the parties were not addressed by this Order, the Court finds that those arguments have been rendered moot by the discussion herein. As a result, no further analysis of those arguments is necessary.

### CONCLUSION

For the above stated reasons, the decision of the Bankruptcy Court is **REVERSED** and this case is **REMANDED** for reconsideration in light of the findings herein.

8. Unfortunately, unlike the issue of lifting the stay, the issue of whether post-petition interest may be included in the repayment plan despite § 502 is not addressed in the legislative history.