**In the Matter of Susan P. MONROE, Debtor.**

**No. 02–10133–WHD.**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

July 3, 2002.

Raul R. Knighten, David Sicay–Perrow, Sicay–Perrow and Knighton, P.C., Atlanta, GA, for Mitsubishi Motors Credit of America, Inc.

M. Regina Thomas, Atlanta, GA, Chapter 13 Trustee.

### *ORDER*

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Before the Court is the consideration of the confirmation of the Debtor's Chapter 13 Plan. An objection to confirmation was filed by Mitsubishi Motor Credit of America, Inc. (hereinafter "Mitsubishi"), which resulted in a hearing being held on May 2, 2002. This matter constitutes a core proceeding within the Court's subject matter jurisdiction. *See* 28 U.S.C. § 157(b)(2)(L).

Mitsubishi has an undersecured security interest in the Debtor's vehicle. A nondebtor individual is also obligated on the debt owed to Mitsubishi. At the first meeting of creditors, the Debtor expressed an intent to pay the unsecured portion of Mitsubishi's claim in full and to pay the contract rate of interest on the unsecured portion of the claim. The Debtor desired to do this in order to prevent Mitsubishi from seeking relief from the co-debtor stay, provided by § 1301 of the Bankruptcy Code, and pursuing the co-debtor for payment of its claim. However, the Debtor never amended her proposed Chapter 13 plan to provide for these terms.

Prior to the confirmation hearing, Mitsubishi objected to confirmation of the Debtor's plan because the proposed plan did not contain the above-mentioned provisions. At the confirmation hearing, Mitsubishi also proposed payment of the unsecured portion of the claim and the interest concurrently with the secured claims allowed in this case. The Chapter 13 Trustee opposed the concurrent payment of the unsecured claim and interest. Accordingly, the issues for the Court are: 1) whether the Bankruptcy Code allows a debtor to specially classify a co-signed debt so that the debt receives preferential treatment, including the payment of interest, and 2) whether the Bankruptcy Code allows a debtor to pay an unsecured claim with interest concurrently with other secured claims.

Section 1322(b)(1) allows a Chapter 13 debtor to "designate a class or classes of unsecured claims, as provided in section 1122," providing that the debtor does not unfairly discriminate against any class so designated. 11 U.S.C. § 1322(b)(1). When faced with the issue of whether a particular provision in a Chapter 13 plan is unfairly discriminatory, courts generally apply some form of the "unfair discrimination test." In doing so, courts consider various facts and circumstances to determine whether the special treatment is fair. *See In re McNichols*, 249 B.R. 160, 176 (Bankr.N.D.Ill.2000) ("Courts have devel-

oped a four-part test to determine if the discrimination is unfair: (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the plan is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.").

However, the language of § 1322(b)(1) also provides that a "plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims." 11 U.S.C. § 1322(b)(1). There is a split among the courts as to whether the unfair discrimination test applies in cases in which the special treatment is afforded to a co-signed debt. *Compare In re Chacon,*[1] 202 F.3d 725 (5th Cir.1999) (applying the unfair discrimination test where the "debtor proposed to pay the cosigned debt in full, with 12% interest, prior to any distributions to the general unsecured class" and concluding that "[n]o justification appears for a high and preferential interest rate"), *In re McNichols,* 249 B.R. 160, 176 (Bankr. N.D.Ill.2000) (applying the unfair discrimination test to a co-signed debt), *and Nelson v. Easley (In re Easley),* 72 B.R. 948, 955–56 (Bankr.M.D.Tenn.1987) (finding that even a cosigned consumer debt is subject to the unfair discrimination test), *with In re Campbell,* 242 B.R. 547 (Bankr. S.D.Ga.1999) (holding that section 1322(b)(1) sanctions "different and favored treatment for a debtor's consumer debts which are co-signed by another individual and constitutes a carve-out to the 'unfair

discrimination standard' "), *In re Thompson,* 191 B.R. 967 (Bankr.S.D.Ga.1996) ("since section 1322(b)(1) was amended to include the language regarding co-signed debts, the 'unfair discrimination' test has lost its significance in dealing with the issue of the special classification of co-signed debts"), *and In re Dornon,* 103 B.R. 61, 64 (Bankr.N.D.N.Y.1989) (holding that a cosigned consumer debt is an exception to the general unfair discrimination rule).

■ The Court agrees that the language of § 1322(b)(1) creates an exception to the unfair discrimination test in cases involving a co-signed debt. Prior to 1984, when Congress amended § 1322(b)(1) to include the co-debtor language, the statute presumably subjected all special classifications to the unfair discrimination test. In the Court's view, if co-debtor claims were to remain subject to the unfair discrimination test, Congress would have had no reason to amend the statute.

■ A lengthy and instructive analysis of the legislative history of the 1984 amendment to § 1322(b)(1) can be found in Judge Benavides' concurring opinion in *In re Ramirez,* 204 F.3d 595 (5th Cir.2000). The opinion notes that, prior to the 1984 amendments, courts applied the unfair discrimination test to the special classification of co-debtor claims, and a majority of these courts had disallowed the special classification, concluding that it was unfairly discriminatory. *Id.* at 599–600. The legislative history of the amendment indicates that Congress was aware of these cases and "recognized that, as a practical

---

1. It should be noted that the Fifth Circuit Court of Appeals had a more recent case with nearly identical facts, and the court chose to follow its previous holding in *In re Chacon. See In re Ramirez,* 204 F.3d 595 (5th Cir. 2000). However, Judge Benavides, concurring specially, noted that he had "concerns

regarding the analysis contained in that prior precedent." He concluded that, "[b]ut for the existence of our prior opinion in *In re Chacon* . . . I would vacate the judgment of the bankruptcy court and remand for further consideration of the debtors' plan."

matter, many debtors will attempt to pay a co-signed debt regardless of whether the plan that is confirmed allows for such a preferred distribution" and that this practice would likely jeopardize the feasibility of the debtor's plan. *Id.* at 600 (citing S.Rep. No. 65, 98th Cong., 1st Sess., 17–18 (1983)). The opinion concluded that Congress intended to except the debtor from having to prove the fairness of the special classification because its "overriding priority was to determine that the proposed plan was feasible so it could be successfully completed." *Id.* Given the context of the amendment and the legislative history, the Court agrees that Congress intended to permit debtors to specially classify co-debtor claims without convincing a court that the classification is not unfairly discriminatory.

■ Accordingly, so long as a debtor's Chapter 13 plan complies with the requirements of § 1322(b)(1) with regard to other debts and the mandatory requirements of § 1325, the Court will not deny confirmation on the ground that the debtor proposes to treat unsecured co-debtor claims differently than other unsecured claims. *See In re Thompson*, 191 B.R. 967 (Bankr.S.D.Ga.1996) ("rather than considering whether the special treatment is unfairly discriminatory, the 'debtor's ability to separately classify cosigned debts [should be] conditioned upon the debtor satisfying the basic elements of section 1322(b)(1) while staying within the constraints of the Code as a whole, to wit: a consumer debt, cosigned for the debtor's benefit, the separate classification of which does not ·jeopardize other required elements for confirmation as contained in section 1325.' "). For example, the Court could not confirm a debtor's plan if the special treatment of a co-signed debt left the debtor unable to pay as much to the other unsecured creditors as they would

have received in a liquidation, as required by § 1325(a)(4).

Having determined that the Debtor need not satisfy the unfair discrimination test with regard to the payment of the unsecured portion of the claim in full, the Court must now consider whether the Debtor's plan can provide for payment of post-petition interest on Mitsubishi's unsecured claim. Again the courts are split on the issue of whether post-petition interest can be paid on an unsecured debt. One view holds that § 502 prohibits a debtor from paying unmatured post-petition interest on claims. *See In re Deen*, 260 B.R. 577 (Bankr.S.D.Ga.2000); *In re Alls*, 238 B.R. 914 (Bankr.M.D.Ga.1999).

However, in *Southeastern Bank v. Brown*, the court arrived at the opposite conclusion by analyzing the interplay between §§ 1301 and 1322(b)(1) and the legislative history of § 1301. *Southeastern Bank v. Brown*, 266 B.R. 900 (S.D.Ga. 2001). The court considered the impact of § 1301, which provides that a co-debtor stay remains in effect so long as the debtor agrees to pay the creditor's claim in full. *See* 11 U.S.C. § 1301 ("the court *shall* grant relief from the stay ... to the extent that ... the plan ... proposes not to pay such claim") (emphasis added). To determine the meaning of "payment in full" of the creditor's claim, the court also considered the legislative history of § 1301. The court concluded that the legislative history clearly indicated that Congress intended that the full amount of the claim would include post-petition interest, costs, and attorney's fees, if provided for in the contract. *Id.* Accordingly, the court found that, because § 1301 does not protect the co-debtor unless the debtor pays the full amount of the claim, which includes post-petition interest, then it would make little sense to hold that a debtor is prohibited from paying post-petition interest on unse-

cured, co-debtor claims. *Id.* ("Given the practical effect of § 1301 and the fact that the Code itself acknowledges that cosigned debts are unique, this Court must find that § 1301 is implicitly excepted from the post-petition interest provisions of § 502"); *see also In re Butler,* 242 B.R. 553 (Bankr. S.D.Ga.1999) ("The creditor is protected to the full amount of his claim, including post-petition interest, costs and attorney's fees, if the contract so provides.") (quoting H.R.REP. No. 95–595, at 122 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6083); *see also In re Campbell,* 242 B.R. 547 (Bankr.S.D.Ga.1999) (finding that section 1322(b)(1)'s authorization of different treatment for co-signed debts "is broad enough to encompass interest on co-debtor obligations").

The Court finds the reasoning and approach announced in *Brown* to be logical and persuasive. Therefore, the Court will allow the Debtor to propose the payment of interest on the unsecured portion of Mitsubishi's claim. However, as mentioned above, the Debtor's plan does not so provide. Accordingly, the Debtor will be required to amend the plan before it can be confirmed with this provision.

■ The final issue to be resolved is whether the claim can be paid pro-rata along with the other secured claims. Section 1322(b)(4) allows a debtor's Chapter 13 plan to pay an unsecured claim at the same time as secured claims. *See* 11 U.S.C. § 1322(b)(4) (a debtor's Chapter 13 plan may "provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim"). The plain language of the statute does not place any restrictions or conditions on the debtor's freedom to avail himself or herself of § 1322(b)(4), excepting the general requirements of section 1325, as discussed above. *See, e.g., In re Baines,* 263 B.R.

868 (Bankr.S.D.Ill.2001) ("According to Section 1322(b)(4), a debtor may *choose,* at his sole discretion, to pay his unsecured and secured creditors contemporaneously.") (emphasis in original); Collier on Bankruptcy ¶ 1322.08 (15th ed.2001) while debtors normally desire to pay secured claims and priority claims first, these claims ("are not otherwise entitled to payment in advance of unsecured claims under the plan.").

One bankruptcy court, however, has held that a debtor cannot pay the post-petition interest on the unsecured portion concurrently. *See In re Butler,* 242 B.R. 553 (Bankr.S.D.Ga.1999). In deciding the issue of the timing of the payment of this type of post-petition interest, the *Butler* court noted that, "[w]hile the text and legislative history of Section 1301 contemplate the payment of post-petition interest, they do not directly address the timing of such payment except to acknowledge that, while the co-debtor stay does not affect the co-debtor's substantive rights, it 'requires him to wait along with all other creditors for that portion of the debt that the debtor would repay under the plan.'" *Id.* at 558 (quoting H.R.REP. No. 95–595, at 122 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6083). The court also explained that " '[s]ection 1326 governing plan payments provides no direct guidance, except to require the trustee to make payments' in accordance with 'the confirmed plan.'" *Id.* (citing 11 U.S.C. § 1326(a)(2)). Seeking guidance as to the correct distribution scheme for the post-petition interest, the court looked outside of Chapter 13 to the provisions of Chapter 7.

Outside of Chapter 13, the only provision of the Bankruptcy Code that specifically addresses the order for payment of claims is Section 726, found in the liquidation chapter. In the absence of direct guidance in Chapter 13 as to the

timing of payments, that section is useful by analogy because to be confirmed a Chapter 13 plan must meet the hypothetical liquidation test found in Section 1325(a)(4). To meet that test I hold that claims which must be paid first in a Chapter 7 must also be paid first in Chapter 13. Otherwise, creditors in a lower distribution class will be paid to the exclusion of creditors in a higher class anytime a Chapter 13 case is dismissed during the three to five year duration of plan payments. A plan which proposes to alter the Section 726 sequence of distribution thus, prospectively, will fail to satisfy Section 1325(a)(4).

Distribution under Section 726 comes only after the trustee has disposed of property on which a lien exists. 11 U.S.C. § 725. Therefore, in Chapter 7, a trustee must first protect liens by payment, or abandonment, or by furnishing adequate protection. *See* §§ 725, 361, and 363(e). Then the residual estate must be distributed to unsecured priority claims, Section 726(a)(1); allowed general unsecured claims, Section 726(a)(2); and interest on those claims entitled to receive it, Section 726(a)(5). In this case, since the plan provides that general unsecured creditors will receive only a percentage of their allowed claims in full satisfaction of those claims, no interest is payable to them. However, because the claim of Southeastern Bank is separately classified to receive payment in full, with interest, the interest element of its claim is payable under Section 726(a)(5).

Section 726(a)(5) provides that payment of post-petition interest should be made after payment of all other claims, including unsecured claims both timely and tardily filed in a Chapter 7 case. I hold that the Chapter 13 Trustee may pay claims for post-petition interest only

after secured claims, priority claims, and the principal amount of distributions on allowed unsecured claims. After the principal of all such claims is paid whether in full or pro-rata, the trustee shall pay the accrued interest on co-debtor claims.

*Id.* at 558–59.

The Court does not agree with the reasoning of the *Butler* court that the distribution scheme applicable in Chapter 7 cases should guide the Court's decision on whether or not interest on an unsecured co-signed debt can be paid concurrently with secured claims. The Court finds that § 1322(b)(4) directly addresses this issue and, consequently, there is no need to look outside of Chapter 13 to resolve it. Chapter 13 gives the debtor the flexibility to choose which debts to pay first. Normally, debtors will choose to pay those debts that would otherwise survive bankruptcy. However, there is no mandate, as evidenced by the language of § 1322(b)(4), that requires the debtor to pay secured debts first. The debtor should have the right to pay an unsecured claim, including the interest allowed in the case of a co-signed debt, if the debtor determines that it is in his or her best interest to do so and the plan continues to comply with the other requirements of Chapter 13.

The Chapter 13 Trustee has not argued that the plan provisions at issue cause the plan to be otherwise non-confirmable. Therefore, in accordance with the foregoing reasoning, the Chapter 13 Trustee's objection to the proposed plan provisions, to the extent that it does not allege that the plan is otherwise non-confirmable, is overruled. Should the Debtor desire to pay the unsecured portion of Mitsubishi's claim in full, with interest and concurrently with the secured claims, the Debtor will be required to file an amended plan, which

must be served on all parties in interest. Once the appropriate notice time has passed, the Court will reset the Debtor's confirmation hearing.

IT IS SO ORDERED.