**In re Jimmy L. LEONARD, Edna L. Leonard, Debtors.**

No. 97–33162.

United States Bankruptcy Court, E.D. Tennessee.

March 10, 2004.

Billy P. Sams, Oak Ridge, TN, for Debtors.

Robert R. Carl, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Knoxville, TN, for GMAC.

Gwendolyn M. Kerney, Knoxville, TN, Chapter 13 Trustee.

### MEMORANDUM ON MOTION FOR ORDER TO RELEASE TITLE

RICHARD S. STAIR, JR., Bankruptcy Judge.

Before the court is the Motion for Order to Release Title (Motion) filed by the Debtors on January 30, 2004, requesting an order by the court directing GMAC to release its lien on the title to an automobile and to turn over the title to the Debtors. The hearing on this Motion was held on March 3, 2004.[1]

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A) and (O) (West 1993).

## I

The Debtors filed the Voluntary Petition commencing their Chapter 13 bankruptcy case on July 23, 1997. GMAC was listed in the Debtors' statements and schedules as a secured creditor of Mrs. Leonard and a non-filing co-debtor, Brian A. Shaffer, holding a claim secured by a 1994 Chevrolet Suburban truck. On September 10, 1997, GMAC filed its proof of claim in the amount of $21,356.47, attaching copies of the retail installment contract executed by Mrs. Leonard and Brian A. Shaffer on May 13, 1996, and the Tennessee Certificate of Title issued on September 26, 1996. The Certificate of Title identifies the registered owners of the Suburban as "Edna L. Leonard and/or Brian A. Shaffer."

The Debtors' Chapter 13 Plan, which was confirmed on October 28, 1997, provided for the cram down of GMAC's secured claim in the amount of $17,143.00 to be paid by the Chapter 13 Trustee with monthly payments of $400.00 together with 12% interest. Accordingly, GMAC, in addition to its allowed secured claim of $17,143.00, had an allowed unsecured claim of $4,213.47.

The Debtors made all payments under the Plan, and they received a discharge pursuant to an Order Discharging Debtor After Completion of Chapter 13 Plan on October 29, 2002. The Chapter 13 Trustee's Final Report, which was filed on June 10, 2003, reflects that GMAC received the entire secured portion of its claim, plus $6,501.04 in interest. Additionally, GMAC received $884.83 on its unsecured claim, leaving a deficiency balance of $3,328.64. The Final Decree closing the Debtors'

---

1. The hearing, initially held on February 18, 2004, was continued to March 3, 2004, to allow counsel for GMAC and the Debtors to research the issues involved. Counsel for GMAC appeared at the first hearing, but did not attend the March 3 hearing. After considering argument of the Debtors' counsel, the court will make its ruling without input from GMAC's counsel.

Chapter 13 bankruptcy case was entered by the court on October 3, 2003.[2]

The Debtors filed the Motion, arguing that they completed their Chapter 13 Plan and received a discharge therefrom, but that GMAC has failed to release its lien on the title to the Suburban and turn over the title to them. Additionally, the Debtors aver that GMAC has attempted to collect the deficiency balance on its claim from the Debtors in exchange for release of the title. As a result, the Debtors seek an order from the court directing GMAC to release the title and to cease all collection activities against the Debtors on this discharged debt.

## II

■ As an initial matter, discharge under Chapter 13 of the Bankruptcy Code is governed by 11 U.S.C.A. § 1328(a), which provides, in material part, that "[a]s soon as practicable after completion by the debtor of all payments under the plan ... the court shall grant the debtor a discharge of all debts provided for by the plan[.]" 11 U.S.C.A. § 1328(a) (West 1993 & Supp.2003). The effects of discharge are as follows:

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section ... 1328 of this title ...; [and]

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset

any such debt as a personal liability of the debtor ...[.]

. . . .

(e) Except as provided in subsection (a)(3) of this section,[3] discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

11 U.S.C.A. § 524 (West 1993). "Section 524(a) was designed to 'ensure that once a debt is discharged, the debtor will not be pressured in any way to repay it.'" *Stoneking v. Histed (In re Stoneking)*, 222 B.R. 650, 652 (Bankr.M.D.Fla.1998) (quoting H.R. REP., No. 595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6320).

■ Notwithstanding the provisions of § 524, there is no injunction preventing a creditor from proceeding with collection actions against a non-filing co-debtor once a Chapter 13 case has ended. During the pendency of Chapter 13 bankruptcy cases, co-debtors are afforded protection under the Bankruptcy Code as follows:

(a) Except as [otherwise] provided ... after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—

. . . .

(2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

11 U.S.C.A. § 1301(a)(2) (West 1993).

■ The purpose of the co-debtor stay is to delay creditors from asserting their rights against co-signed debts while a

---

2. The case was reopened pursuant to an Order entered on February 6, 2004.

3. This subsection concerns community or marital property and is not applicable in this case.

**614**

Chapter 13 bankruptcy case is pending. *See In re Fink,* 115 B.R. 113, 115 (Bankr. S.D.Ohio 1990). Institution of the co-debtor stay allows debtors the "opportunity to protect their cosigners from liability." *Southeastern Bank v. Brown,* 266 B.R. 900, 907 (S.D.Ga.2001).

> Cosigners benefit by receiving at least a temporary reprieve from the liability they technically agreed to. As long as debtors do in fact pay the full debt through bankruptcy, cosigners can avoid the liability they perhaps never expected to actually incur. Of course, if debtors do not propose to pay the debt in full in the plan, their co-debtors will have to pay, but if debtors are not going to pay, their co-debtors would be liable at some point anyway. That cosigners might somehow benefit from putting off that liability temporarily does not serve such a significant purpose as to undermine the result reached here. *See* H.R.Rep. No. 95–595, at 122 (1977)[, U.S.Code Cong. & Admin.News 1978, 5963, 6083] ("[The co-debtor stay] is designed only to protect the principal debtor, not the co-debtor. Any protection of the co-debtor is incidental.")

*Brown,* 266 B.R. at 908.

■ GMAC was paid the entire balance of its allowed secured claim, and it was paid a portion of its allowed unsecured claim through the Debtors' Chapter 13 Plan. Once she received her discharge, Mrs. Leonard was no longer liable to GMAC for any deficiency balance owing on the Suburban. Nevertheless, because Brian A. Shaffer is a co-owner of the Suburban, as is evidenced by the appearance of his name on the Certificate of Title, GMAC still retains a lien on the Suburban because it was not paid in full. Moreover, while Mrs. Leonard received a discharge of her liability on the GMAC debt, her co-signer did not, and Mr. Shaffer is still liable to GMAC for the deficiency balance together with accruing interest. As such, GMAC is not required to release its lien until it is paid in full. While GMAC is enjoined by § 524(a) from proceeding against Mrs. Leonard to collect the deficiency balance, it has every right to proceed not only against Mr. Shaffer, but also against the Suburban in which Mr. Shaffer granted GMAC a security interest. Additionally, if Mr. Shaffer does not pay GMAC, there is nothing preventing Mrs. Leonard from voluntarily doing so in order to receive the title to the Suburban. However, because the Suburban is co-owned and secured by a co-signed debt, until and unless GMAC receives the deficiency balance owed under the May 13, 1996 retail installment contract, it is not required to release its lien and surrender the title to the Suburban to any party.

An order consistent with this Memorandum will be entered.

### *ORDER*

For the reasons stated in the Memorandum on Motion for Order to Release Title filed this date, the court directs that the Motion for Order to Release Title filed by the Debtors on January 30, 2004, is DENIED.

SO ORDERED.